City of Chicago, Appellee, v. William B. Wernecke, Appellant.

Gen. No. 46,357.

First District, Second Division.
December 14, 1954.
Released for publication January 4, 1955.

Melvin B. Lewis, Samuel A. Kavathas, and Cecil L. Cass, all of Chicago, for appellant.

John J. Mortimer, Corporation Counsel for City of Chicago, for appellee; L. Louis Karton, Head of Appeals and Review Division, and John L. Steffens, both of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is a quasi-criminal action brought by the plaintiff, the City of Chicago, against William B. Wernecke, the defendant, because of his alleged failure to rid certain premises in the City of Chicago of rats and properly seal all the rat holes, which is claimed to be a violation of a municipal ordinance. The court heard the case without a jury and found the defendant guilty of a violation of the ordinance and assessed a fine

against him of $25 and $10 costs, from which the defendant appeals.

Defendant was prosecuted under chapter 99 of the Municipal Code of Chicago which has to do with nuisances. He limits his appeal to the sole issue that he is not one of the class of persons named therein whom the City of Chicago can hold responsible for failure to provide rat stoppages on a certain piece of property. Section 99–1 provides:

"It shall be the duty of the commissioner of buildings to serve notice, in writing, upon the owner, occupant, agent, or person in possession, or control of any lot, building, or premises in or upon which any nuisance may be found, or who may be the owner or cause of any such nuisance, requiring him to abate the same in such manner as he shall prescribe, within a reasonable time. It shall not be necessary in any case for the commissioner to specify in his notice the manner in which any nuisance shall be abated, unless he shall deem it advisable so to do. Such notice may be given or served by any officer who is so directed or deputed. If the person so notified shall neglect or refuse to comply with the requirements of such order by abating such nuisance within the time specified, such person shall be fined not less than five dollars nor more than fifty dollars for every such violation.

"It shall be the duty of the commissioner of buildings to proceed at once upon the expiration of the time specified in said notice to cause such nuisance to be abated; provided, however, that whenever the owner, occupant, agent or person in possession or control of any premises, in or upon which any nuisance may be found, is unknown or cannot be found, the commissioner of buildings shall proceed to abate such nuisance without notice. In either case the expense of such abatement shall be collected from the person who may have created, continued or suffered such nuisance to exist, in addition to any penalty or fine."

71

The record reveals that on or about March 10, 1952, defendant entered into a contract with Evelyn Lundquist which provided as follows:

"Contract between Evelyn Lundquist and Wm. B. Wernecke pertaining to the collection of Rents of the within mentioned properties owned by Evelyn Lundquist.

"Wm. B. Wernecke agrees to act as rent collector and agent for Evelyn Lundquist for the following properties;

"(A) Property known as 930 N. Wells St. and 210 W. Walton St., Chicago, Illinois.

"(B) Property known as 876 N. Wells St. and 209 W. Locust St., Chicago, Illinois.

"(C) Property known as 1653 N. Sedgwick St., Chicago, Illinois.

"Wm. B. Wernecke agrees that all sums of money will be delivered to the credit of Evelyn Lundquist and hereby acknowledges that he will have no power to make any repairs, alterations, or improvements upon any of the above mentioned properties. Wm. B. Wernecke further agrees that he will not attempt to convert any of the monies or proceeds of rents belonging to Evelyn Lundquist to the payment of coal or water bills, insurance premiums, painting, decorating, altering, improving, janitors fees or rubbish and garbage removal, without express written instructions and authorizations for each and every payment from Evelyn Lundquist.

"Evelyn Lundquist agrees to pay Wm. B. Wernecke a legal Chicago Real Estate Board Rate of commission for his services of collecting rent. The above mentioned rate to be paid upon the gross amount of rent received.

"Wm. B. Wernecke shall [prepare] an itemized statement of all rents received and deliver same to Evelyn Lundquist by the twelfth (12) day of each and every month; by the terms of this contract Wm. B. Wernecke

shall not withhold his fee but shall send the entire gross sum to Evelyn Lundquist. Evelyn Lundquist agrees to mail Wm. B. Wernecke his fee by the twentieth (20th) day of each and every month by the terms of this contract.

"This contract shall be in force and valid between both parties, beginning on the 10th day of March, 1952, until either Wm. B. Wernecke or Evelyn Lundquist may give other party sixty (60) days notice in writing that this contract shall be terminated."

On April 15, 1953, and on two subsequent dates, a building inspector employed by the City of Chicago visited the premises in question and observed rat holes in the exterior walls. A complaint was filed against the defendant charging that on the dates in question the defendant owned or was in charge of the premises in question and did unlawfully maintain, operate or control the property and that he did not rid it of rats and properly seal rat holes in the apartments located on the premises.

The defendant testified that prior to February 4, 1952, he was the owner of the premises; that on that date he sold the premises to one Evelyn Lundquist. At the time of the sale there were no violations in the building of the ordinance in question. He testified he lived in Huntley, Illinois, and that he visited the premises about once a week to collect rents; that in no way did he exercise any control over the premises other than to collect the rents and remit them to the owner, Evelyn Lundquist. She in turn paid him a fee. It was agreed between the parties at the time of oral argument before this court that Evelyn Lundquist, the owner of the property, is a nonresident of this State.

We find no case in Illinois interpreting the ordinance. The case of City of St. Paul v. Clark, 84 Minn. 138, is, however, directly in point. The ordinance involved, except for minor language differences, is identical to

73

the one in the instant case. Reversing a judgment for the City of St. Paul, the Supreme Court of Minnesota said:

"An 'agent' such as is described in this section is one who in all respects represents the owner, so far as the control and regulation of the property under his agency is concerned. It means an agent who has the power to permit the commission of a nuisance and the continuance thereof, and has no reference to an agent whose authority is limited, and who has no general supervision of the property. Possibly, in practice, a mere rental agent may have such general control of premises, but, in the absence of evidence to that effect, we cannot assume such to be the fact. A mere rental agent is ordinarily one who simply lets premises and collects rents thereon, and, in the absence of definite proof, it cannot be said that this defendant was the representative of the owner in all respects, so far as the control of the property is concerned. . . . he cannot be held personally responsible unless he has been put into actual and complete control of premises, with authority to abate nuisances, and such control would imply power and authority to retain from the moneys collected the amount necessary for their abatement."

This statement of the law of agency is clearly within the doctrine of agency as enunciated by the decisions of our Supreme Court. See, e. g., Smith v. Rutledge, 332 Ill. 150, 153–4, and cases there cited.

There is no showing in this record that the defendant in any way exercised any control of the premises. His sole duty was to collect the rents. He was prohibited by the terms of his contract from doing anything else. To charge the defendant, it was incumbent upon the city to show that he exercised powers other than those shown in the contract or that it was entered into for the purpose of avoiding the effects of the ordinance. This it did not do.

The judgment of the trial court is reversed and the cause remanded with directions to find the defendant not guilty.

Judgment reversed and cause remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.